IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KHUE NGUYEN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-2229 |
| | § | |
| HAI PHU NGUYEN, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendants Ngo Thi Ngoan, Hein The Ta, and Lai Xuan Ta's (collectively, the "Foreign Defendants")[1] Motion to Dismiss for Lack of Jurisdiction, Res Judicata, and Forum Non Conveniens.[2] (Doc. No. 24). Khue Nguyen ("Plaintiff") filed a response (Doc. No. 27) and a supplemental response (Doc. No. 28). The Foreign Defendants filed a reply. (Doc. No. 29). Plaintiff then filed a sur-reply.[3] (Doc. No. 31). After careful consideration, the Court **GRANTS** the Foreign Defendants' Motion and **DISMISSES** Plaintiff's case against them for want of personal jurisdiction.

### I. BACKGROUND

Except as otherwise noted, the following factual summary is based on the allegations in Plaintiff's Amended Complaint. In 1980, Ha Thi Thy Thuy and Ta Van Viet formed a partnership in Ho Chi Minh City, Vietnam. (Doc. No. 17 at 4). They named the partnership "Bach Tuyet"

---

[1] Ngoan and Lai Xuan Ta are citizens of Vietnam; Hein The Ta is a citizen of France.

[2] Plaintiff Khue Nguyen requested entry of default against the Foreign Defendants the same day that they filed their motion to dismiss. (*See* Doc. Nos. 21–23).

[3] Plaintiff also filed a Motion for Nonrecognition and Nondeference of Alleged Vietnamese Judgments over a month after filing his sur-reply. (Doc. No. 32). That motion requests the Court disregard alleged judgments the Foreign Defendants attached to their brief in support of the Motion to Dismiss regarding its res judicata arguments. (*See* Doc. Nos. 25–1 & 25–2).

("Snow White" in English). They intended to manufacture and sell embroidery-craft products. (*Id.*). Viet contributed real property (the "Property") to Snow White and Thuy contributed a large sum of money. (*Id.*).

Through a 1982 partnership agreement, Viet and Thuy each owed fifty percent (50%) of the "mixed common property" of Snow White and were entitled to fifty percent (50%) of the net profits. (*Id.* at 6). Viet also conveyed a right to possess and use the Property to Thuy, including a right to reside there. (*Id.*). Thuy was essentially in charge of Snow White's business and operations; Viet retained a technical advisory position. (*See id.*).

In 1985, Viet married Ngoan. (*Id.* at 7). Four years later, Viet died. (*Id.*). Ngoan and one of Viet's children, Hien The Ta, purportedly demanded redemption of Viet's interest in Snow White.[4] (*Id.* at 8). In July 1989, Thuy paid Ngoan and Hien The Ta "a large amount of gold" in exchange for Viet's interest in Snow White; thus, "Thuy then owned 100 percent of [the] partnership, its properties, and continued to reside in the [Property]." (*Id.*).

Thuy continued to operate Snow White for 23 years. In late 2012, she allegedly returned from a business trip to find that Ngoan had taken possession of the Property, closed Snow White's facilities, and evicted all of its employees. (*Id.* at 9). Despite Thuy's demands to turn over the partnership assets, Ngoan allegedly bribed the Vietnamese police to evict Thuy from the Property and permanently denied her access to the shop house and legal documents in it. (*Id.* at 10).

Thuy filed an administrative dispute with a local government authority, which ruled in her favor. (*Id.*). Nevertheless, Ngoan allegedly bribed the police to escort Thuy out of the property every time she attempted to enter it. (*Id.*). Thuy then filed a lawsuit against Ngoan. (*Id.*). Between 2013 and 2017, Thuy and Ngoan attended multiple required mediations with the Vietnam court

---

[4] Viet's other children are Hoa Le Thi Ta and Lai Xuan Ta. The other Defendants' relation to Viet is unclear, but they are allegedly his heirs.

while Ngoan was supposed to locate and contact Viet's heirs. (*See id.* at 11). In June 2017, Ngoan "accidentally" informed the Vietnam court that she had contacted all of Viet's heirs, who signed contracts consenting to Ngoan representing their rights and to act "in their principal capacity with consolidated inheritance claims and unrestricted power" to resolve the demands of Thuy. (*Id.* at 11, 18; *see also id.* at 13 ("Ngoan . . . concealed these heir contracts from [the] court in Vietnam while still asking the court for 'more time to locate heirs' despite all heirs had [sic] been accounted for in 2013. Later, Thuy found out this was a fraudulent tactic of 'waiting out the limitation period.'")). The contracts were all allegedly in writing with unified content, notarized, certified or authenticated by government officials, and attached with a copy of each heir's passport. (*Id.* at 12).

Thuy attempted to add the heirs as defendants in the Vietnam lawsuit, but the court did not permit her to do so. (*Id.* at 11). Specifically, that court told Thuy she needed to raise the claims in a new lawsuit; it also advised that it lacked jurisdiction over the non–Vietnamese defendants. (*Id.* at 17). At trial against Ngoan, Thuy could only litigate a title dispute because she could not access the legal documents and files in the Property because of Ngoan's actions. (*Id.* at 17). It appears that the Vietnam Court ruled against Thuy in that action.

In 2018, Thuy sold and assigned her partnership interest in Snow White and claims against the Defendants to her son, Plaintiff. (*Id.* at 19). To date, Defendants have refused to turn over the partnership's property to Plaintiff. (*Id.* at 19–20).

Plaintiff first sued the Defendants in the Northern District of Texas, Fort Worth Division in September 2018. (Case No. 4:18-cv-801-A, the "Fort Worth Case").[5] Plaintiff's causes of action were: (1) breach of contract; (2) "[w]rongfully, illegally detention [sic] of partnership assets

---

[5] The Fort Worth Case also included Thao Xuan Ta and four additional Does as defendants; Hai Phu Nguyen, Mai Tuyet Nguyen, Que Dang Nguyen, and Anh Kim Nguyen were also named as heirs of Thin Thi Ta's estate, not in their individual capacity. (*See* Fort Worth Case at Doc. No. 1).

through aid and abetting"; and (3) wrongful, illegal, intentional and malicious detention of partnership assets. (*See id.* at Doc. No. 1, pp. 11–15). The Foreign Defendants moved to dismiss for lack of personal jurisdiction and forum non conveniens. (*Id.* at Doc. No. 22). The District Court granted the motion for want of personal jurisdiction because Plaintiff failed to plead facts to support the exercise of jurisdiction over the Foreign Defendants in Texas. (*Id.* at Doc. No. 26). The District Court also dismissed the case against Defendant Hoa Le Thi Le (who resides in Illinois) pursuant to Rule 4(m). (*Id.* at Doc. No. 37).

Finally, on August 2, 2019, the District Court granted the remaining defendant's motion for summary judgment under res judicata and statute of limitations. (*Id.* at Doc. No. 134). A final judgment against Plaintiff was entered on the same day, which he subsequently appealed (*Id.* at Doc. Nos. 135, 137). His appeal is still pending before the Fifth Circuit. (*See* Case No. 19-10934).

While the summary judgment motion was pending in the Fort Worth Case (and about six months after the Foreign Defendants were dismissed), Plaintiff filed this lawsuit in the Southern District of Texas. (Doc. No. 1). The Amended Complaint pleaded the following causes of action: (1) breach of contract; (2) wrongful, unlawful detention of partnership assets; (3) conversion of partnership property, or, alternatively, statutory theft; and (4) civil conspiracy. (Doc. No. 17 at 23–29). As to the civil conspiracy claim, Plaintiff believes that the representation contracts revealed a common plan and that "the heirs and Ngoan conspired together" to take control of Snow White. (*Id.* at 11). According to the amended complaint, the Foreign Defendants' agreements in Texas, communications with Hai Phu Nguyen, Anh Kim Nguyen, Mai Tuyet Nguyen, and Que Dang

Nguyen (collectively, the "Texas Defendants")[6], and conspiracy among Texas Defendants gives rise to this intentional tort and breach of contract action in Texas. (*Id.* at 19).

On October 7, 2019, Plaintiff requested entry of default against the Foreign Defendants. (Doc. Nos. 21–23). That same day those same defendants moved to dismiss for lack of personal jurisdiction, res judicata, and forum non conveniens. (Doc. No. 24). In response to the res judicata arguments, Plaintiff then moved for "nonrecognition and nondeference" of Vietnamese judgments alleged by the Foreign Defendants. (Doc. No. 32).

## II. LEGAL STANDARD

A claim against a defendant over whom the Court lacks personal jurisdiction must be dismissed. FED. R. CIV. P. 12(b)(2). When a district court rules on a Rule 12(b)(2) motion without a hearing, as is the case here, the plaintiff must make a prima facie showing of jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The court may consider the contents of the record, including affidavits or other recognized methods of discovery, in deciding whether to exercise specific jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The court accepts the plaintiff's non-conclusory, uncontroverted allegations as true, and resolves conflicts between the facts contained in the parties' affidavits in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

In a diversity action, a federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with Fourteenth Amendment to the United States Constitution. *Mullins v. TestAmerica, Inc.*,

---

[6] Plaintiff also includes allegations in the Amended Complaint concerning Thoa Xuan Ta, who is also allegedly one of Viet's heirs and a citizen of Texas. (*See, e.g.*, Doc. No. 17 at 13, 19). Thoa Xuan Ta is not, however, a defendant in this case. (*Id.* at 1, 2–3). The Court thus excludes him from its list of the Texas Defendants.

564 F.3d 386, 398 (5th Cir. 2009). The two-part jurisdictional inquiry collapses into a single step in this forum because the Texas long-arm statute extends to the limits of federal due process. TEX. CIV. PRAC. & REM. CODE § 17.042; *Johnston*, 523 F.3d at 609; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). To meet the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits of the forum state by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Mullins*, 564 F.3d at 398.

"Minimum contacts" can give rise to either specific personal jurisdiction or general personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction exists if the asserted claims arise out of or relate to the defendant's contacts with the forum. *Cent. Freight Lines Inc.*, 322 F.3d at 381. The contacts must indicate that the nonresident defendant "purposefully availed himself of the benefits of the forum state." *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Brown v. Flowers Indus. Inc.*, 688 F.2d 328, 333 (5th Cir. 1982). In contrast, general jurisdiction exists for any cause of action if the nonresident defendant's contacts with the forum are so substantial, continuous and systematic that the defendant is essentially "at home" in the forum. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

### III. ANALYSIS

#### A. Plaintiff's Claim for Civil Conspiracy

It is abundantly clear that Plaintiff filed this lawsuit in an attempt to cure the deficiencies the District Court found in the Fort Worth Case (and to avoid an unfavorable ruling). Most notably, Plaintiff's Amended Complaint spends several pages pleading facts trying to support the exercise of personal jurisdiction over the Foreign Defendants. (*See, e.g.*, Doc. No. 17 at 19 (explaining why "Texas courts' jurisdiction on all defendants is proper.")). Specifically, he alleges in this case that

the Defendants engaged in a civil conspiracy to commit the other causes of action. (*Compare id.* at 11–13, 19, 27–30 *with* the Fort Worth Case at Doc. No. 1).

Plaintiff argues that the Foreign Defendants are subject to Texas' long-arm statute because the Foreign Defendants allegedly communicated and entered in contracts with the Texas Defendants in furtherance of that conspiracy. (*See* Doc. No. 17 at 14, 19). *See also* TEX. CIV. PRAC. & REM. CODE § 17.042(1) ("[A] nonresident does business in this state if the nonresident: (1) contracts ... with a Texas resident and either party is to perform the contract in whole or in part in this state ...."). That fact alone does not necessarily mean the Foreign Defendants are subject to this Court's jurisdiction. Rather, the relevant inquiry is still whether the Court's exercise of personal jurisdiction complies with the standards of federal due process. *See, e.g., Johnston*, 523 F.3d at 609; *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558–69 (Tex. 2018) ("The long-arm statute is satisfied by a defendant who commits a tort in whole or in part in this state.... However, allegations that a tort was committed in Texas do not necessarily satisfy the United States Constitution.") (internal citations and quotations omitted).

As explained, due process requires: (1) a defendant purposefully direct its activities or avail itself of the privilege of the forum state; (2) the plaintiff's claims arise out of or relate to the defendant's contacts with the state; and (3) the exercise of personal jurisdiction be fair and reasonable. *See, e.g., Carmona v. Leo Ship Mgmt.*, 924 F.3d 190, 193 (5th Cir. 2019). Plaintiff argues that the Foreign Defendants purposefully availed the privileges of Texas when they communicated with the Texas Defendants because the content of their communications gave rise to the tort of civil conspiracy. (Doc. No. 17 at 19; Doc. No. 27 at 9–10).

Plaintiff's civil conspiracy arguments are unavailing. First, the Supreme Court of Texas has made clear that that "a nonresident's alleged conspiracy with a Texas resident does not confer

personal jurisdiction over the nonresident in Texas." *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 887 (Tex. 2017) (citing *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995)). The Fifth Circuit has similarly found that allegations of a conspiracy will not establish a prima facie case of personal jurisdiction.[7] *See, e.g.*, *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999); *Bar Group, LLC v. Bus. Intelligence Advisors, Inc.*, 215 F. Supp. 3d 524, 539 (S.D. Tex. 2017) ("[A] plaintiff must show that each defendant individually, and not as part of a conspiracy, purposely established minimum contacts with Texas that would satisfy due process.").

Turning to the particular minimum contacts Plaintiff alleged, Defendants participated in substantial group communication "via telecommunication means and face-to-face meeting [sic] to enter into" the representation contracts.[8] (Doc. No. 27 at 10–11). In addition, since the content of those communications allegedly gave rise to an intentional tort, Plaintiff claims that is sufficient to constitute purposeful availment of the forum. *See Wien Air Ala., Inc. v. Bradnt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.").

---

[7] This makes sense considering that civil conspiracy is not an independent tort under Texas law. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019) ("We have repeatedly called civil conspiracy a 'derivative tort,' meaning it depends on some underlying tort or other illegal act. . . . Civil conspiracy depends entirely on the injury caused by the underlying tort; the injury is the damage from the underlying wrong, not the conspiracy itself.") (citations omitted). In other words, if none of Plaintiff's other tort claims survive, then his civil conspiracy claim cannot survive. *See, e.g.*, *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 752 (5th Cir. 2019); *Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997). As explained below, the Court is granting the Foreign Defendants' motion to dismiss the underlying "independent" causes of action. Therefore, "no underlying tort exists on which to base conspirator liability." *Patel v. Pac. Life Co.*, No. 3:08-CV-0249-B, 2009 WL 1456526, 2009 U.S. Dist. LEXIS 44105, at *46 (N.D. Tex. May 22, 2009).

[8] The Court notes that the Amended Complaint does not actually describe how the communication took place. Rather, Plaintiff merely pleaded that all Defendants "consult[ed] and discuss[ed]" their plans or the Foreign Defendants "communicated with [the] Texas [D]efendants. (Doc. No. 17 at pp. 13, 19). Nevertheless, the Court will take the accusations Plaintiff makes in his opposition to the motion to dismiss at face value.

The fact that the Foreign Defendants communicated with the Texas Defendants does not create minimum contacts with Texas.[9] Indeed, merely contacting or contracting with a resident of a forum state is insufficient to subject a defendant to specific jurisdiction in that state. *See Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 348 (5th Cir. 2019). Moreover, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (citations omitted). In other words, the Foreign Defendants' alleged contacts with Texas are as random and coincidental as the fact that certain co-defendants happened to allegedly live in the State when they communicated with them.

Plaintiff's reliance on *Brandt* is also misplaced. In that case, a German attorney represented a Texas-based corporation. *Brandt*, 195 F.3d at 209. The corporation sued the attorney in Texas alleging fraud, fraudulent inducement, breach of contract, and breach of fiduciary duty. *Id.* at 211. The Fifth Circuit reversed the District Court's dismissal for want of prosecution because the attorney's alleged communications with Texas actually gave rise to an intentional cause of action. *See id.* at 213. Specifically,

> According to the plaintiff's allegations . . . [the defendant] performed several tortious actions outside of Texas directed towards [the plaintiff] in Texas. . . . These contacts take the form of letters, faxes, and phone calls to Texas by [the defendant] whose contents contained fraudulent misrepresentations and promises and whose contents failed to disclose material information.

*Id.* at 212. Accordingly, the content of the attorney's communications with Texas gave rise to intentional torts, which the Fifth Circuit said constitutes purposeful availment. *Id.* at 213.

---

[9] Even taking the Amended Complaint in the light most favorable to Plaintiff, there are only conclusory allegations that Hein The Ta or Lai Xuan Ta ever communicated with the Texas Defendants. Plaintiff pleaded that "*Ngoan* contacted all heirs and they agreed to consolidate all inheritance claims to Ngoan" to defend the lawsuit in Vietnam. (Doc. No. 17 at 12 (emphasis added)). Additionally, "*Ngoan* sent to all heirs in Texas and France" specific information concerning the Vietnam lawsuit. (*Id.* (emphasis added)). Plaintiff then explains why a conspiracy can be confirmed by the uniformity of the representation contracts. (*See id.* at 28). There are no specific facts suggesting that Hein The Ta or Lai Xuan Ta communicated with anyone who was actually in the State of Texas.

In this case, the content of the Foreign Defendants' communications with the Texas Defendants was negotiating representation contracts and discussing litigation in Vietnam. Those communications, even in the light most favorable to Plaintiff, only show that Ngoan communicated with individuals in Texas to develop a scheme to carry out the other causes of action in Vietnam. The communications did not breach any contracts with Plaintiff; nor did they constitute conversion or detention of Snow White's property—all of which occurred in Vietnam. Since civil conspiracy is not an independent tort and cannot justify personal jurisdiction over an out-of-state defendant, *Brandt*'s "actual content of communications with a forum giv[ing] rise to intentional tort causes of action" language is inapposite in this case. *See id.; cf. Bar Group, LLC*, 215 F. Supp. 3d at 539.

Lastly, Plaintiff states the civil conspiracy could not have occurred without certain actions taking place in Texas; namely, each defendant typed an authorized contract, signed it, had it notarized, had the Texas Secretary of State certify it, and had the General Consult of Vietnam in Houston re-certify it. (*See* Doc. No. 27 at 11). Those actions taken by the Texas Defendants, Plaintiff argues, invoked the benefits and protections of Texas. (*Id.*). Even so, the Court cannot exercise personal jurisdiction over the Foreign Defendants. One defendant's contacts with Texas cannot be imputed on another defendant. *See Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of N.Y., Inc.*, 889 F. Supp. 2d 912, 926–27 (S.D. Tex. 2012) (first citing *Shaffer v. Heitner*, 433 U.S. 186, 204 & n.19 (1977); and then citing *Gibson*, 897 S.W.2d at 773–74). Although the Foreign Defendants may have benefited from the Texas Defendants' actions in Texas, there is no allegation that any of the former took any actions in the State. Thus, Plaintiff's allegation amounts to an impermissible imputation argument.

The Court finds that it lacks personal jurisdiction over the Foreign Defendants as to Plaintiff's claim of civil conspiracy. It therefore grants their motion and dismisses that cause of action as to them for want of jurisdiction.

**B.      Plaintiff's Claims for Breach of Contract, Unlawful Detention, Conversion/Theft**

Plaintiff's other causes of action must also be dismissed. He does not directly address them in his response or sur-reply; however, he appears to believe that his civil conspiracy claim is enough to establish personal jurisdiction against the Foreign Defendants as to the other three claims. Even assuming the Foreign Defendant could be sued in this forum for the civil conspiracy allegations, the Court's jurisdiction over one of Plaintiff's does not confer it jurisdiction over all of his claims. Personal jurisdiction is a claim-specific inquiry; "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for *each claim.*" *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) (emphasis added).

Plaintiff does not argue that the Foreign Defendants have any contacts with Texas that gave rise to his claim for breach of contract. Indeed, it does not appear that any such contacts exist. The contracts at issue are the 1982 Snow White partnership agreement and two buyout agreements from 1989. All three were formed in Vietnam, concerning a Vietnam partnership; and there is no indication that any performance under the contracts occurred in Texas. Moreover, the Foreign Defendants' actions that Plaintiff alleges resulted in a breach of the contracts did not occur in Texas. Similarly, the unlawful detention and conversion/theft causes of action relate to Ngoan's possession of Snow White and its property in Vietnam. There is no allegation that the actions took place in Texas or that the property is in or concerns Texas.

Therefore, even if the Foreign Defendants purposefully availed this State by entering into a civil conspiracy with the Texas Defendants, Plaintiff's non-conspiracy causes of action do not arise from or relate to those contacts. That being the case, requiring the Foreign Defendants defend against those claims in this Court would not satisfy due process. The Court therefore grants their motion to dismiss for want of personal jurisdiction and dismisses the breach of contract, unlawful detention, and conversion claims against them.

## IV. CONCLUSION

For the foregoing reasons, Defendants Ngo Thi Ngoan, Hein The Ta, and Lai Xuan Ta's motion is (Doc. No. 24) **GRANTED** and Plaintiff's claims as to them are **DISMISSED** for want of personal jurisdiction. Further, the Court **DENIES** Plaintiff's requests for entry of default as to those defendants (Doc. Nos. 21–23) **as moot.**

Additionally, since the Court is not addressing the res judicata or forum non conveniens arguments—including the validity of alleged judgments in the Vietnam lawsuit—it **DENIES** Plaintiff's Motion for Nonrecognition and Nondeference of Alleged Vietnamese Judgments (Doc. No. 32) **without prejudice.**

Signed in Houston, Texas this 21st day of February, 2020.

Andrew S. Hanen
United States District Judge

12